The BOARD OF COUNTY COMMISSION-
ERS OF WYANDOTTE COUNTY,
KANSAS, Appellant,

v.

WILLIAM J. HOWARD, Inc., a corpora-
tion organized under the laws of the
State of Illinois, Appellee.

No. 5189.

United States Court of Appeals
Tenth Circuit.

Feb. 7, 1956.

Rehearing Denied March 2, 1956.

J. E. Schroeder and Harold H. Harding, Kansas City, Kan., for appellant.

T. F. Railsback, Kansas City, Kan., and Eugene P. Kealy, Chicago, Ill., for appellee.

Before BRATTON, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action in the United States District Court for the District of Kansas by appellee William J. Howard, Inc., herein called the contractor, against the Board of County Commissioners of Wyandotte County, Kansas, herein called the county, to recover the sum of $16,-671.97 under Count One of the complaint and the sum of $163,087.66 under Count Two thereof, together with interest and costs. A jury was waived and the trial was had to the court. At the conclusion thereof, the court determined that the contractor was entitled to recover but because of the complicated and extensive character of the transactions appointed a master with directions to determine the amount of recovery, make findings and submit his report to the court. This was done and the master filed his report and findings, determining the amount of recovery to which the contractor was entitled. The trial court considered the master's report, made its own findings of fact and conclusions of law and based thereon entered judgment for the contractor for $16,671.97 on the First Count and $136,656.47 on the Second Count and

for costs, including the fees and expenses of the special master.

The controversy arose out of a contract between the county and the contractor for the partial rebuilding of a bridge over the Kansas River in Kansas City, Kansas, which had been seriously damaged by flood waters. Since the controversy centers entirely around the reconstruction of Pier No. 2 in the bed of the river which had been completely destroyed by the flood, it is not necessary to set out all the items of work in the contract for the performance of which the contractor obligated itself. Neither is it necessary to set out the entire contract price for the work the contractor was required to perform. It is without dispute that all of the contract price except the sum of $16,671.97, for which the contractor sought recovery in Count One, was paid. The amount of $163,087.66 which the contractor sought to recover under the Second Count was for additional expenditures and loss of reasonable profits thereon occasioned by the alleged breach of the county's obligation under the contract.

So far as the questions presented are concerned, it is sufficient to say that the contractor was required to reconstruct, in fact to rebuild, a new pier in the place of old Pier No. 2, which had been destroyed. The contract consists of a formal writing to which is attached the proposals of the contractor and numerous supplemental specifications relating to the various details of the construction, among which were drawings showing in a general way the location of the pier to be reconstructed.

The contractor contends that it was the county's duty through its engineer to set the stakes to determine the center line of all piers. The county on the other hand contends that the contractor was furnished with adequate plans and specifications showing exactly the distances between all piers to be constructed; that under the contract and general and supplemental specifications it was the obligation and duty of the contractor to

determine where the new pier was to go; and that notwithstanding its engineers pointed out the spot where the new pier was to go, the contractor was nonetheless charged with determining the location of the new pier.

The contract provided for the relocation of Pier No. 2 at the same point where the destroyed pier had been located. Prior to beginning work a representative of the contractor and the engineer representing the county went to the site of the bridge where the engineer pointed out to the contractor's representative the spot where part of the piling from the old Pier No. 2 showed in the river and told him the new pier should be built in the same place the old pier had been built. He pointed out the location of the pier from the old sheet piling and the ripples of the water which could be seen, and told him, "The new pier goes where you see the old pier there, restricting the use of the word location to the exact limited area that the pier covered." Rebuilding of new Pier No. 2 was begun at such point.

After a great deal of time and effort had been expended at this location, it was discovered that it was not the point where Pier No. 2 must be located. It was approximately 28 feet from such point. Work there was discontinued and work was begun and prosecuted to completion at the corrected location. The entire controversy centers around who was chargeable with this error.

The trial court found that it was the duty of the county to furnish the correct site for the work and to determine the correct center line of the pier.

The contract made the standard specifications of the Highway Commission, as modified by a set of printed supplemental specifications, a part of the contract. Section 5.6 of the standard specifications of the Highway Department provides that "In case of bridges, if requested by the Contractor the Engineer shall set stakes determining the centerlines of all piers, pedestals or abutments, * * * The Contractor shall construct the work in accordance with the Engineer's stakes and marks, * * *" This is the specification upon which the contractor relies. It takes the position that when the engineer pointed out the spot where the new pier was to be constructed it was duty bound to comply with such designation. The county on the other hand takes the position that this general specification has no application because it is in conflict with and therefore superseded by Section 1 of the supplemental specifications.

Section 1 of the supplemental specifications is entitled "Scope of Work." In general it delineates the nature and the scope of work to be performed in repairing this bridge. It places upon the contractor the responsibility of making field measurements to determine "definitely the actual distances between piers and the actual dimensions of the other parts of the existing structure to be left in place in order to fit accurately the new work to the old." We think the purpose of this specification was to place upon the contractor the responsibility of seeing that replacement parts were cut to fit.

Section 5 of the general specifications has no reference to the scope of the work. It is entitled "Control of Work," and Section 5.6 states specifically that the "Contractor shall construct the work in accordance with the Engineer's stakes and marks, * * *" We think it is clear that where the engineer is required to set the stakes and does so the contractor must do the work at such point. We think an analysis of the specifications and the testimony with respect thereto sustains the court's finding that it was the duty of the county to designate the location of the new pier.

The difficulty was that the engineer erroneously determined that the point where the superstructure of old Pier No. 2 was visible was the place of the old pier and marked it as the place where the new pier should go. This was the county's error and not that of the contractor, and the court correctly conclud-

ed that the contractor was entitled to recover for the additional work caused by this error plus a reasonable profit thereon.

Appellant cites a number of cases holding that an error by the engineer of the municipality does not relieve the contractor from complying with the specifications of the contract. Among these is the case of Wilson v. City of St. Joseph, 125 Mo.App. 460, 102 S.W. 600. In that case was involved a contract to grade a street by filling in with earth. The city engineer set a stake erroneously designating the height to which the street was to be filed. It was held and correctly so that the contractor was not thereby relieved from the duty of filling the street to the height designated in the specifications. What the engineer by his error in effect did was to change the specifications and this he could not do. The contract specifically set out the height to which the street was to be filled and the contractor was bound to take note thereof and fill the street to that height. Other cases are cited which we have read but which in the interest of brevity we do not analyze in detail in this opinion. It is sufficient to say that in our view they are distinguishable upon their facts.

■ It is also urged that the court erred in allocating items of cost such as labor, overhead, use of equipment and rental of equipment during such periods of time as no work was being done on the job. Apparently there was a period of approximately nine months when no work or at least very little work was done on this job. Yet, to illustrate, the contractor continued to charge the job for the wages of the laborers the same as if they had been working on the job and also for the use of his own equipment and equipment which he had rented. Because of the error by the engineer in fixing the location of Pier No. 2, delay in prosecuting the work at the correct site occurred. Thereafter, due to winter and other climatic conditions, it was impossible to continue with the work. On account of war conditions, labor and heavy equipment were in short supply. Had the rental equipment been released and the contractor's own equipment removed to other jobs, it would not have been available when needed and, had the laborers been released, they would have gone to other jobs and could not have been reassembled when work was resumed. This would have made the performance of the contract impossible or at best long delayed. Under these circumstances the items were properly charged to the job.

Complaint is made that the exhibits offered to prove these items were inadmissible because not supported by adequate basic data. It is sufficient to say that we do not share this view. It is contended that the court and the master erred in permitting the contractor's auditor to testify from numerous abstracts and schedules purportedly showing the total cost of the additional work and in admitting such exhibits in evidence over objection, when the original records were neither offered in evidence nor made available to the county for inspection.

■ There is no dispute as to the law relating to the admission in evidence of summaries of voluminous records. It may be simply stated to be that most courts require as a condition that the mass of data shall, if the occasion seems to require it, be placed at hand in court or at least be made accessible to the opposing party.[1] It seems without dispute that at the beginning of the litigation the county obtained an order upon motion requiring the contractor to lodge with the clerk of the court all of its daily reports, all of its original payroll records, all of the photographs taken from day to day and other permanent records of the contractor. Apparently this order was complied with to the satisfaction of the county because the record is silent

---

1. Wigmore on Evidence, Vol. IV, § 1230; Berthold-Jennings Lumber Co. v. St. Louis, I. M. & S. R. Co., 8 Cir., 80 F. 2d 32, 102 A.L.R. 688.

with respect to any complaint that the contractor had not complied therewith. The master's report states that " * * * Plaintiff promptly complied with this order and lodged all of said documentary evidence with the Clerk, taking an itemized receipt from the Clerk therefor." It also appears from the master's report that all of these records were removed from court by the county's attorney for examination and inspection, that all of them except the payroll records were returned to court, were present at the hearing before the master and were introduced in evidence.

■■ Apparently the county's attorney never returned the pay roll records to the clerk, at least there is no record that he did so. It is without dispute that these records were lost and were not available at the time of trial. In view of the fact the county admittedly had access to all of these records and presumably inspected and examined them, the court committed no reversible error in not requiring the contractor at the time of trial to send to Chicago for duplicate records, especially where no attempt was made to impeach the correctness of the summaries made from such records and introduced in evidence. It is not clear from the record whether the other exhibits to which objection was made were the records themselves which the contractor filed in court pursuant to the order of the court or summaries thereof, nor is it material. If they were the records themselves they were admissible because no objection was lodged with the court that they did not constitute a compliance with the court's order for production of records. If on the other hand the exhibits were summaries of such records then in court, then the supporting data for these exhibits was present in court.

■ Minor contentions are presented dealing with the assertion that several different claims and theories were advanced by the contractor and that in any event the contractor was entitled to no recovery on Count One. The relevancy of these contentions is not clear. In any event we do not think they require a detailed discussion. As is apparent from what has been said, it is our view that the trial court correctly concluded that both counts stated a cause of action, entitling the contractor to recovery; that no reversible error occurred during the trial; and that the finding as to the amount of damages is sustained by the record.

Affirmed.